**ELI LILLY AND COMPANY, Plaintiff,**

v.

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

**C. A. No. 2817-64.**

United States District Court
District of Columbia.

Dec. 6, 1965.

James H. Littlepage, Washington, D. C., Dugald S. McDougall, Chicago, Ill., for plaintiff.

Joseph Schimmel, Deputy Solicitor, Washington, D. C., for defendant.

JACKSON, District Judge.

This is a civil action to obtain a patent brought by plaintiff, assignee of the patent application in suit, against defendant in his official capacity as Commissioner of Patents, according to the provisions of 35 U.S.C. § 145.

Plaintiff's assignor, Richard T. Rapala, filed an application for patent, entitled "Novel Pregnenolone Acetonides", on July 27, 1961, and the Patent Office identified the application as Serial No. 127,115. In the course of prosecution of this application, all the claims were finally rejected by the Examiner as unpatentable over a United States patent of Feather et al., patent No. 3,021,345, which was granted February 13, 1962, on an application for patent actually filed in the United States on September 19, 1960. Prior to the grant of this patent, Feather et al. properly claimed the right of priority of a corresponding patent application filed in the British Patent Office on September 24, 1959, and a certi-

fied copy of this counterpart British application for the same invention was filed in the United States Patent Office.

Thus, the British and American filing dates for the respective Feather et al. patent applications were both prior to the actual filing date of Rapala's United States application. Faced with this fact situation, Rapala filed an affidavit under Rule 131 of the Patent Office Rules of Practice in order to prove an actual reduction to practice of his claimed invention in this country prior to the actual filing date of the Feather et al. United States patent application, September 19, 1960. However, Rapala did not prove an actual reduction to practice of his invention in this country prior to September 24, 1959, the filing date of the Feather et al. British patent application. Since Rapala made no attempt in the Patent Office to antedate the Feather et al. British application date, it must be presumed that he is unable to do so, especially since plaintiff has made no offer to prove in this Court a date of actual reduction to practice in this country by Rapala prior to September 24, 1959. If plaintiff were able to prove this, it would have made such an offer of proof, since a civil action under 35 U.S.C. § 145 is in the nature of a trial *de novo*, and a plaintiff is not bound by the record established by proceedings in the Patent Office. Moreover, both plaintiff and defendant in the present case agree that there is no genuine issue as to any material fact and both parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Therefore, there is no question whatsoever that the relationship of critical dates is that Rapala proved a date of invention by actual reduction to practice of his claimed invention in this country at some time during the time interval of nearly one year between the filing date of the Feather et al. British application, September 24, 1959, and the actual filing date of the counterpart Feather et al. United States application, September 19, 1960. At this point, it is worthy of mention that a date of invention may be established by any one of at least three means, namely: (1) actual reduction to practice, wherein the invention is made as a matter of fact in this country [1]; (2) constructive reduction to practice, wherein the invention is made as a matter of law in this country by filing an appropriate application in the United States Patent Office; and (3) constructive reduction to practice wherein the invention is made as a matter of law in this country by filing an appropriate application in a foreign country, then subsequently filing within one year an application in the United States Patent Office, which subsequent application is entitled to the full benefit of the earlier filing date in the foreign country for essentially all purposes,[2] if and provided that the full requirements of 35 U.S.C. § 119 are met.

It should also be mentioned that invention itself consists of two aspects, conception and reduction to practice. If Rapala had been able to prove conception of his invention prior to the British filing date of Feather et al., coupled with proof·of due diligence on the part of Rapala from a time just prior to this September 24, 1959 British filing date until Rapala's reduction to practice during the interval between the Feather et al. British and American filing dates, then this reference, on the facts of this case, would have been removed for all purposes. Since no questions of conception coupled with due diligence are raised

---

1. Certain exceptions to this rule, for the benefit of United States citizens serving in foreign countries on behalf of our Government, e.g. servicemen and diplomatic personnel, are set forth in 35 U.S.C. § 104.

2. There are at least two major exceptions to this general rule, and quite possibly others, as will be discussed in more detail later in this Opinion. For present purposes, it is sufficient to indicate generally that two major exceptions are (1) the statutory bars of 35 U.S.C. § 102(b) and (2) subject matter that is not common to both the foreign and United States applications, i.e., subject matter that is omitted from either application.

in this case, this constitutes sufficient discussion of these factors.

■ The important question to be settled in this case is one of first impression in this Court. The issue may be stated to be whether, in a situation where a foreign inventor has been granted a United States patent on a United States patent application which is entitled under 35 U.S.C. § 119 to the benefit of an earlier application filing date in a foreign country, this United States patent is available as a reference under 35 U.S.C. § 102(e) [3] for all disclosed subject matter, whether claimed or unclaimed, as of the filing date of the earlier foreign application. This Court agrees with defendant and holds that the foreign filing date is the effective reference date as to all subject matter which is disclosed, whether claimed or not, in the foreign application, to the extent that such disclosures are brought forward and included in both the United States application and the United States patent granted on this application, the latter, of course, being the basis for a 35 U.S.C. § 102(e) rejection.

■■ An important related question is whether another inventor, by proving a date of invention in this country, by either actual or constructive reduction to practice,[4] during the time interval between the foreign filing date and the actual United States filing date of a foreign inventor's patent applications the foreign inventor's United States application being entitled under 35 U.S.C.

§ 119 to benefit of the earlier filing date of the foreign application, can thereby remove the foreign inventor's United States patent as a reference. The Court holds that such reduction to practice during the time interval between the foreign inventor's foreign and actual United States filing dates will not suffice to remove the foreign inventor's United States patent as a reference, as to subject matter disclosed in the United States patent reference, whether claimed therein or not, provided that the disclosed subject matter in the United States patent corresponds to disclosures in the foreign patent application, or applications as the case may be, which serves as the basis of the right of priority accorded to the foreign inventor's United States patent application. It is likewise immaterial whether the subject matter relied upon for reference purposes is claimed or not in the foreign application, so long as it is disclosed therein.

Before proceeding to a more detailed discussion of this case, the Court considers it desirable, in view of the evident confusion as to effective reference dates on the part of writers on this subject, to provide a few examples to illustrate the holding herein.

■■ In the simplest case, the foreign inventor's foreign and United States applications are essentially identical, with allowances for immaterial variations in wording, formal arrangement, and language translation. Therefore, the foreign inventor's United States pat-

---

**3.** In this Circuit a copending patent under 35 U.S.C. § 102(e) is considered part of the "prior art" under 35 U.S.C. § 103, so that no distinction is made, with regard to the effective reference date, between an anticipation rejection under 35 U.S.C. § 102(e) and an obviousness rejection under 35 U.S.C. § 103. The copending patent is effective as a reference as of its application filing date for everything disclosed, whether claimed or not, in the originally filed application, to the extent that such original disclosure is not cancelled from the application during prosecution and thus becomes part of the disclosure in the patent ultimately grant-

ed. Hazeltine Research, Inc. v. Ladd, D.C., 226 F.Supp. 459, affirmed, 340 F.2d 786 (C.A.D.C.). It should be noted, however, that both parties and the Court agree that the rejection presently under consideration is solely of the 35 U.S.C. § 102(e) type.

**4.** Actual reduction to practice according to the facts of this case, but this Court sees no difference in principle whether the reduction to practice is actual or constructive. A date of invention is a date of invention, and may be established by proof of either actual or constructive reduction to practice.

ent will be essentially identical to his foreign application, and will be effective as a reference from the foreign filing date. Of course, it should not even be necessary to say that a United States patent cannot be cited as a reference under 35 U.S.C. § 102(e) until the patent is actually granted. When it is granted, the effective date of the United States patent relates back to the foreign filing date, assuming always that 35 U.S.C. § 119 is applicable.

Suppose now that certain disclosures in the foreign application are omitted, for any reason, from the counterpart United States application. If these disclosures are not added by amendment, assuming this is permissible, then the corresponding United States patent will not contain these disclosures. For whatever value these omitted disclosures may have, if any, they certainly cannot give rise to a proper 35 U.S.C. § 102(e) rejection, which must be based on disclosure actually present in, as distinguished from omitted from, a United States patent.

Another possibility is that subject matter originally present in both the United States and foreign applications may be cancelled from the United States application prior to grant. Once again, a 35 U.S.C. § 102(e) rejection cannot be properly based on disclosures omitted from the United States patent, even though such disclosures were present at one time during the prosecution of the United States application upon which the patent was granted.

As another example, suppose that new subject matter is presented for the first time when the foreign inventor's United States application is filed. Here it is appropriate to consider the analogous situation with regard to 35 U.S.C. § 120. It is believed to be recognized by everyone that the new subject matter of a United States continuation-in-part application must stand on its own filing date. This new subject matter, unlike the commonly disclosed subject matter, is not entitled to the benefit of the filing date of an earlier parent United States application. More will be said about the analogy between 35 U.S.C. §§ 119 and 120 later in the Opinion. For present purposes, it will suffice to state that, in the analogous situation under 35 U.S.C. § 119, the new subject matter presented for the first time in the foreign inventor's United States patent application must stand on its own filing date, i. e., the actual United States filing date. The foreign inventor is not entitled to a right of priority for his United States application as to subject matter not actually included in the foreign application upon which the right of priority under 35 U.S.C. § 119 is based.

The Patent Office Board of Appeals, which rendered a unanimous decision against plaintiff in this case, is apparently well aware of the vital distinction which must be made with regard to the different effective reference dates of a United States patent such as Feather et al., wherein new matter not specifically disclosed in the Feather et al. British application was included for the first time in the Feather et al. United States application. The Board states, at page 3 of the Opinion:

> "No question is raised as to the supporting disclosure in the certified copy of the British specification. (It should be noted that lines 33 to 35 of column 1 of the Feather et al. patent provide a full anticipation, but that this sentence is not used since it does not appear in the British specification, except possibly by reference to another British application which is not relied upon by the U. S. patent and is not before us).

With this general background it is now appropriate to proceed to a more detailed consideration of the relevant statutes, rules of practice, judicial decisions, articles, and other authorities in order to obtain guidance as to the law, the equities, and public policy considerations involved in the area of study with which the Court is concerned due to the facts of this case.

Since the rejection is based on 35 U.S.C. § 102(e) interpreted in light of 35 U.S.C. § 119, it is appropriate to begin with 35 U.S.C. § 102(e). The Reviser's Note for 35 U.S.C.A. § 102 reads as follows:

"Paragraph (e) is new and enacts the rule of [Alexander] Milburn [Co.] v. Davis-Bournonville, 270 U.S. 390 [46 S.Ct. 324, 70 L.Ed. 651], by reason of which a United States patent disclosing an invention dates from the date of filing the application for the purpose of anticipating a subsequent inventor."

It is worthy of mention at this point that "the date of filing the application" is not limited to either the actual United States filing date or the United States application. The expression could include a constructive, or legal, United States filing date obtained by filing a previous application in a foreign country and claiming a right of priority based on the foreign patent application.

Proceeding now to the Milburn decision, upon which 35 U.S.C. § 102(e) is based, this Court is initially impressed by the similarity of petitioner Milburn's arguments to those actually advanced, or which could have been advanced, by the defendant in the present case. In fact, this Court has considered it of value to study these arguments, substituting British patentees Feather et al. in place of American patentee Clifford and applicant Rapala in place of patentee Whitford. With these substitutions, and bearing in mind the fact that the Supreme Court unanimously decided the case in favor of petitioner Milburn, defendant's arguments could be as follows:

"It (the Court below) erred further in overlooking the inequity of the grant to Whitford (Rapala) of a monopoly which would deprive Clifford (Feather et al.) of the right to use important features of his (their) own device and deprive the public of the right to use what was disclosed in Clifford's (Feather et al.'s) prior (British) application and which was either known to Clifford (Feather et al.) to be old or, if invented by Clifford (Feather et al.), deliberately dedicated to the public. * * * The right of the public to use the invention was tentative during the period of two years from the date of the Clifford (Feather et al.) patent, as during this period Clifford (Feather et al.) might have filed an application for a reissue, or a divisional application, claiming the invention, and the application would have related back to the date of filing the original (British) application. * * * Clifford (Feather et al.) perfected his (their) invention when he (they) filed his (their) British) application. The (British) application was a constructive reduction to practice—of what it disclosed—before Whitford (Rapala) conceived (and actually reduced the invention to practice)". 270 U.S. 391–392, 46 S.Ct. 324.

Taking into account the fact that Whitford had already been granted a United States patent, while plaintiff is here seeking to obtain under 35 U.S.C. § 145 a patent for the invention claimed in the Rapala application, although disclosed in the Feather et al. British application, plus the fact Milburn was an infringement suit, this Court nevertheless considers the above arguments to have considerable weight with regard to equitable and policy considerations. With regard to the argument of plaintiff here that unclaimed disclosures in a copending United States patent should not be used for reference purposes, as distinguished from claimed disclosures, which may be used, this Court notes that the following arguments on this point were presented to the Supreme Court by respondent Davis-Bournonville:

"A patent application does not establish prior invention or priority of right unless the subject matter disclosed is claimed. * * *

"The doctrine (of constructive reduction to practice) has no application to unclaimed subject matter, and has been evolved solely for the bene-

fit of one asserting a right to a patent. \* \* \* 270 U.S. 395, 46 S.Ct. 324.

"The unclaimed disclosure in a patent application does not constitute prior knowledge within the meaning of § 4886 (now 35 U.S.C. § 102 (a)) as of the date of filing of the application. \* \* \* To regard the subject-matter disclosed but not claimed in an application as part of the prior art as of the date of filing of that application is, we think, so far in conflict with the practical purpose of the patent law and so inconsistent with all the other rules and procedures that have grown up in the practical carrying out of that purpose that it must be rejected." 270 U.S. 398, 46 S.Ct. 324.

 It would appear that the arguments rejected were those of respondent Davis-Bournonville, as the Supreme Court unanimously decided the case in favor of petitioner Milburn. Strictly as a practical matter, this Court would agree with plaintiff, and would have agreed with Davis-Bournonville, that an applicant for patent cannot reasonably be held to have actual knowledge of unclaimed disclosures in pending United States patent applications, since 35 U.S. C. § 122 requires that "[a]pplications for patents shall be kept in confidence by the Patent Office". However, it requires no citation of authority to assert that the law reflects equitable and policy considerations, as well as practical matters, and sometimes the latter must suffer in favor of the former.

Proceeding now to consideration of the Opinion of Mr. Justice Holmes for a unanimous Supreme Court in Milburn, this Court notes the following statement: "by the words of the statute a previous foreign invention does not invalidate a patent granted here if it has not been patented or described in a printed publi-

cation. Rev.Sts. § 4923." At first glance this would appear quite beneficial to plaintiff's position in this case. However, the use of the words "patented or described in a printed publication," plus the citation of Section 4923 of the old Revised Statutes clearly indicate to this Court that Mr. Justice Holmes was speaking only of the predecessor of present subsection (a) of 35 U.S.C. § 102.[5]

The statutory ground of rejection in the present case is 35 U.S.C. § 102(e), not 35 U.S.C. § 102(a), an entirely different ground of rejection with which the present case is not at all concerned.

Mr. Justice Holmes states "the principle that, subject to the exceptions mentioned, one really must be the first inventor in order to be entitled to a patent" at 270 U.S. 400, 46 S.Ct. 325. Then on the next page of Milburn, the following statement is made:

"The delays of the patent office ought not to cut down the effect of what has been done. The description shows that Whitford was not the first inventor. Clifford had done all that he could do to make his description public. He had taken steps that would make it public as soon as the Patent Office did its work, \* \* \*. We see no reason in the words or policy of the law for allowing Whitford to profit by the delay and make himself out to be the first inventor when he was not so in fact, when Clifford had shown knowledge inconsistent with the allowance of Whitford's claim." 270 U.S. 401, 46 S.Ct. 325.

This Court sees no more logical reason to hold the delays of either the British Patent Office or the United States Patent Office against Feather et al. than Mr. Justice Holmes saw to hold the necessary delays of the United States Patent Office against Clifford. But a far

5. 35 U.S.C. § 102(a) reads as follows:
 A person shall be entitled to a patent unless—
 (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or \* \* \*.

more important delay than the delays of any Patent Office is involved in this case, namely, the delay of Feather et al. in filing their United States patent application nearly one year after filing their counterpart British application. At first glance the natural tendency is to discount the possible interests of foreign inventors according to the facts of this case for two reasons: (1) the foreign inventors, Feather et al., already have their United States patent; (2) plaintiff here is the assignee of an American inventor, Rapala. But a single illustration will suffice to show what might happen to foreign inventors if the statutory construction urged by plaintiff were adopted by this Court. Suppose Feather et al. had disclosed and claimed a patentable combination of elements, one of these elements being already known, but only in limited circles in Great Britain. Since the element was not their invention, Feather et al. could not legitimately claim it, so the element is disclosed but not claimed in the Feather et al. British and United States patent applications. During the interval between the filing dates of the two Feather et al. applications, suppose Rapala invents the element in the United States and files a patent application disclosing and claiming the element. According to plaintiff, Rapala should receive the patent for the element, being the first actual inventor of the element in the United States. If Feather et al. now proceed to make, use, or sell their patented combination in the United States using the Rapala element or a substantial equivalent thereof, Feather et al. will thereby directly infringe the Rapala patent. Under such circumstances, this Court is of the opinion that, realistically speaking, Feather et al. cannot be considered to have obtained the "[b]enefit of (their) earlier filing date in (a) foreign country" as provided them by 35 U.S.C. § 119, even considering this benefit as a "personal privilege," as plaintiff contends. As a practical matter, Feather et al. would have a worthless patent, unless they chose to exercise their "personal privilege" by paying royalties to plaintiff, Rapala's assignee, for a license to use the patented element in their patented combination.

Suppose instead that the defendant's interpretation of 35 U.S.C. § 102(e) is accepted by the Court. In that event, the patent rights of foreign inventors Feather et al. are not diminished, but Rapala, an American inventor, would not obtain a patent. However, at the beginning of this hypothetical situation, it was noted that Rapala is not the first inventor. The first actual inventor may be unknown, but to apply the reasoning of Mr. Justice Holmes in Milburn, it is not necessary to show who did invent the thing in order to show that Rapala did not. 270 U.S. 401, 46 S.Ct. 324. This Court readily acknowledges that Rapala was the first actual American inventor of the claimed subject matter, but he was clearly not the first inventor in a real sense. This being so, while Rapala may have a legal right to a patent as the first American inventor, the Court finds it difficult to say he has an equitable right to such a patent, whose issuance might well severely prejudice the legitimate patent rights of prior foreign inventors. At any rate, the Court is of the opinion that plaintiff is not entitled to win this case on the basis of plaintiff's superior equities. If plaintiff's urged construction is to prevail, it must be on the basis of either strict interpretation of the law or clear national policy to the effect that the patent rights of American inventors must invariably prevail over those of foreign inventors.

If the one year delay in the filing of the Feather et al. United States application were merely due to the fact that these foreign inventors did not find it worth their while to expedite filing of their application in this country any sooner, due to more pressing business matters, this Court would not hesitate to find them guilty of laches. As a matter of fact, Feather et al. probably could have filed their United States patent application within a week after their British application, if they had felt it necessary, or even advisable to do so. Obvi-

ously, no language translation was necessary. The requirements of disclosing and claiming the invention are quite similar in the two countries.[6] Air mail service between London and Washington is a matter of perhaps two days, three at most.

If a one year delay were permitted to foreign inventors by law, it is likely that they would take advantage of it, since the later an application is filed, the later the patent is likely to be issued, and the seventeen year term of a United States patent commences with the date of grant according to 35 U.S.C. § 154. The later years of a patent term are likely to be more valuable years, when development of the invention has been completed and a market established for the patented article, machine, or composition of matter.

Thus, as a practical matter, foreign inventors are likely to delay filing their United States patent applications as long as such delay in filing will not seriously prejudice their patent rights in the United States. The question now to be considered is whether foreign inventors have a right to delay filing their United States patent applications until one year after filing their counterpart foreign applications, without running the risk of suffering serious harm to their patent rights in this country as a result of acts which might occur in this country during the one year delay in filing, such acts including the independent making of inventions in this country by American inventors. In a real sense, the question is whether foreign inventors have a right to rely on the right of priority guaranteed to the United States patent applications of these foreign inventors by Congress according to 35 U. S.C. § 119. This Court is of the opinion that foreign inventors have a legal right to rely upon 35 U.S.C. § 119, as the words of this provision would be commonly understood by any man familiar with, the English language. The Court is further

of the opinion that, if plaintiff's interpretation of § 119 should be adopted, it would not be inappropriate to say that foreign inventors would have been sucked into quicksand by a combination of an Act of Congress and statutory interpretation on the part of this Court.

With this treatment of the typical one year delay between a foreign inventor's foreign filing and United States filing dates being sufficient for present purposes, it is appropriate to complete the study of the Milburn case. In regard to the distinction that plaintiff contends should be made between claimed and unclaimed disclosures in a United States patent used for reference purposes, Mr. Justice Holmes states the following views in Milburn:

"It is said that without a claim the thing described is not reduced to practice. But this seems to us to rest on a false theory helped out by the fiction that by a claim it is reduced to practice. A new application and a claim may be based on the original description within two years, and the original priority established notwithstanding intervening claims. Chapman v. Wintroath, 252 U.S. 126, 137 [40 S.Ct. 234, 64 L.Ed. 491]. A description that would bar a patent if printed in a periodical or in an issued patent is equally effective in an application so far as reduction to practice goes." 270 U.S. 401–402, 46 S.Ct. 325.

Speaking next of "the analogies relied upon below" by the Second Circuit Court of Appeals, the following statement is made by Mr. Justice Holmes:

"The policy of the statute as to foreign inventions obviously stands on its own footing and cannot be applied to domestic affairs." 270 U.S. 402, 46 S.Ct. 325.

This Court is of the opinion that the particular analogy of which the Supreme Court Opinion in Milburn speaks is the

6. Knight, "British Patent Office Practice", Journal of the Patent Office Society, Vol. 47, No. 1, January 1965, pp. 16–39. Note

especially the similarity expressed at the top of p. 20 to the requirements of 35 U.S.C. § 112.

following analogy which the Second Circuit attempted to draw involving R.S. 4887, the predecessor of present 35 U.S.C. § 119:

"An analogy may be taken from R.S. § 4887 (Comp.St. § 9431), providing that one may receive a patent for his invention, even though it had 'been first patented * * * in a foreign country,' except as provided in the act. What is patented in the foreign country is the invention, yet it has long been held that, since what may prevent the obtaining of an American patent is the existence of a foreign patent, the two patents must be identical, which means that the 'inventions actually claimed' must be identical; for 'it is not sufficient that the foreign patent may disclose the invention of the later United States patent, where it is not therein claimed' ".[7]

From the previous reference of Mr. Justice Holmes to "a previous foreign invention" at 270 U.S. 400, 46 S.Ct. 324, one could not definitely ascertain whether reference was being made to a foreign inventor's foreign patents or to his counterpart United States patent for the same invention. Although this previous reference was clearly directed to the predecessor of 35 U.S.C. § 102(a), whereas the present rejection is based on § 102 (e) of present Title 35, nevertheless it is true that § 102(a) speaks of an invention "patented * * * in this or a foreign country," and its predecessor R.S. 4923 merely recited the word "patented."

From the analogy drawn by the Second Circuit, to which the Supreme Court refers in Milburn, it now becomes crystal clear that when Mr. Justice Holmes refers to "a previous foreign invention" and "[t]he policy of the statute as to foreign inventions," this reference is made to *foreign* patents covering a previous foreign invention, as distinguished from a United States patent protecting the same previous foreign invention, such as the Feather et al. United States

patent with which the present case is concerned. The Court must emphasize once again that the rejection in the present case is based on the disclosure in a United States patent under 35 U.S.C. § 102(e). The rejection is not based on 35 U.S.C. § 102(a), and it would be immaterial whether or not Feather et al. ever even received a British patent for their British application. The British application could have been abandoned before grant of a British patent, either before or after acceptance and publication of the accepted British application, but this could not affect the outcome of the present case, insofar as this Court can determine.

The following significant statement of the Supreme Court appears in Milburn at 270 U.S. 402, 46 S.Ct. 325:

"The fundamental rule we repeat is that the patentee must be the first inventor."

 If the patentee is not the first inventor, his patent will be held invalid by the Courts, as the Whitford patent was held invalid by the Supreme Court in Milburn. If an applicant is not the first inventor at least the first inventor in the United States, then his application for patent should not be granted in the first place.

On the basis of a thorough review of the Milburn case, this Court is of the opinion that Milburn could, and properly should, have been subsequently interpreted in light of R.S. 4887, the predecessor of present 35 U.S.C. § 119, from 1926 onward. This exact question is not involved in the present case, however. This Court must decide whether § 102(e) of present Title 35, the Patent Act of 1952, should be interpreted in light of another section of the same present Title 35, the Patent Act of 1952, namely § 119 thereof.

 As a general observation, the Court asserts the proposition that, while it may be proper in certain instances to refuse to interpret a 1926 Supreme Court decision (Milburn) in light of a 1903 Act

7. Davis-Bournonville Co. v. Alexander Milburn Co., 1 F.2d 227, 231 (2nd Cir.)

of Congress (R.S. 4887, as amended in 1903), it is something else entirely to refuse to interpret one section of an Act of Congress in light of another section of the *same* Act of Congress. The Patent Act of 1952 enacts present Title 35 of the United States Code into positive law. The several sections of Title 35 were simultaneously enacted (or re-enacted, as the case may be) into positive law as parts of a comprehensive whole. This Court is therefore of the opinion that, in the absence of clear evidence compelling a contrary result, each and every section of present Title 35 should be interpreted in light of each and every other section of present Title 35. To do otherwise would be to defeat the overall intent of Congress. These sections were not individually enacted or re-enacted by Congress in a vacuum, and this Court will not read these sections, which were simultaneously considered by Congress in 1952, as though the several sections were so many completely isolated elements.

The exact language of 35 U.S.C. § 102 (e) enacted by Congress as positive statutory law for the first time in 1952 in order to codify the Milburn rule, is as follows:

"A person shall be entitled to a patent unless—

\* \* \* (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or \* \* \*."

The words of subsection 102 (e) are not at all difficult to understand. "The invention" (first usage) means the invention disclosed and claimed by an applicant such as Rapala. The word "described" interpreted in light of Milburn, includes unclaimed as well as claimed disclosures. The word "patent" is not strictly limited to a United States patent, but it is clear from the context that *only* a United States patent may be

"granted on an application for patent by another filed in the United States." No other country will, at this time, grant a foreign patent on an application filed only in the United States. Likewise, at this time, the United States Patent Office will only grant a patent after a United States application is filed.[8] The word "granted" refers to the fact that the United States application cannot be used as a reference under subsection 102 (e). Only the issued, or granted, United States patent may be so used. "[A]pplication for patent by another filed in the United States" means exactly what it says, namely that another inventor (other than the inventor such as Rapala whose application is being rejected on this statutory ground) must file an application for patent in the United States Patent Office, which application must mature into a United States patent before this statutory ground of rejection can be applicable. "Another" inventor on the facts of this case would be Feather et al. "[B]efore the invention thereof by the applicant for patent" refers to the time at which the invention is made by an applicant for patent such as Rapala, relative to the effective date as a reference of the United States patent which is used as a reference under this subsection 102 (e), namely, the Feather et al. United States patent in this case. As previously mentioned, "invention" includes both conception and reduction to practice. An invention is not made, or completed, until the date on which it is reduced to practice, either actually or constructively (the latter by filing a patent application in either the United States or a foreign country).

On the facts of this case, Rapala proved actual reduction to practice in this country before the date on which Feather et al. actually physically filed their United States patent application, although Rapala was unable to antedate the filing date of the Feather et al. British application,

---

8. This matter is not as simple as it first appears. Proposals have been advanced whereby the filing of an application in one Common Market country would lead to a patent, assuming grant of the application, effective in all six of these countries. Similar proposals have been advanced for the Scandinavian countries.

priority of which was claimed by Feather et al. (or their assignee) under 35 U.S.C. § 119 for the corresponding United States patent application.

 With no dispute as to the facts of this case, both parties having moved for summary judgment, the Court would unquestionably be bound to grant plaintiff's motion for summary judgment if the law is such that 35 U.S.C. § 102(e) is to be considered a law unto itself, as though suspended in mid-air. As previously mentioned, this Court considers the various sections of present Title 35 of the United States Code, enacted into positive law by Congress in 1952, as parts of an integrated whole. Furthermore, when one considers what is actually meant by an "application for patent" as these words are used in 35 U.S.C. § 102(e), the Court believes it appropriate to refer to Chapter 11 of present Title 35, which is entitled "Application for Patent." Twelve sections are included under this chapter heading, sections 111 to 122, inclusive, of present Title 35. This Court believes Congress must have intended that the words "application for patent" in section 102(e), and elsewhere in present Title 35, should be interpreted in light of the twelve sections included in "Chapter 11—Application for Patent." Two of these twelve sections are Sections 119 and 120, which defendant contends are so analogous that each should properly be read in light of the other. Defendant also contends, in essence, that "application for patent" in 35 U.S.C. § 102(e) should properly be interpreted in light of these two analogous sections, both of which are included in "Chapter 11—Application for Patent." The Court views these contentions as entirely reasonable and logical and they are fully accepted.

The first paragraph of 35 U.S.C. § 119 begins as follows:

"An application for patent for an invention filed in this country by any person who has, or whose legal representatives or assigns have, previously regularly filed an application for a patent for the same invention in a foreign country which affords similar privileges in the case of applications filed in the United States or to citizens of the United States, shall have the same effect as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed; * * *."

 The first thing to be noted about this statute is the numerous references to "application for patent," or simply "application." This in itself leads to the conclusion that Congress intended "application for patent" in 35 U.S.C. § 102(e) to be interpreted in light of 35 U.S.C. § 119. Congress does not use words in the same Act with the intention that the same words should mean one thing in one section and an entirely different thing in another section of the same Act.

Upon reading the following proviso at the end of the first paragraph of 35 U.S.C. § 119, the Court gains the distinct impression of having seen these words before:

"* * * but no patent shall be granted on any application for patent for an invention which had been patented or described in a printed publication in any country more than one year before the date of the actual filing of the application in this country, or which had been in public use or on sale in this country more than one year prior to such filing."

 With some immaterial variations, these are the familiar words setting forth the statutory bars of 35 U.S.C. § 102(b)[9]. Thus, from the proviso at

---

9. This repetition of § 102(b) in § 119 is not merely redundant, as the following example will show. German patent law permits an inventor to publish an article disclosing his invention up to six months prior to filing his German patent application. Suppose a German inventor publishes, six months later files his German

the end of the first paragraph of 35 U.S.C. § 119, it is the evident intent of Congress that, in any conflict between the provisions of 35 U.S.C. § 102(b) and 35 U.S.C. § 119, the former should prevail. From this, it might be argued that Congress intended 35 U.S.C. § 102 in general, or 35 U.S.C. § 102(e) in particular, to prevail in any conflict with section 119. As to the general argument, it would have been much simpler for Congress to insert a general proviso to this effect in section 119 than to recite again in detail in the proviso the numerous statutory bars of subsection 102(b), if such had been the real intent of Congress. A similar general proviso with regard to favoring section 119 is included in 35 U.S.C. § 104. Congress specified in section 104 that in any conflict between sections 104 and 119 with regard to proof of the date of an invention made by a foreign inventor in a foreign country, section 119 is to prevail, and a foreign inventor may establish his date of invention abroad by constructive reduction to practice, i. e., by filing a patent application for the invention in a foreign country. This favoritism expressed by Congress toward section 119 by the inclusion of the general proviso in section 104 is a good indication that Congress intended that a broad and liberal construction of section 119 for the benefit of foreign inventors should be adopted by the Courts with the one specifically indicated exception for the statutory bars of subsection 102(b).

As for the specific argument that, because Congress intended subsection 102(b) to prevail over section 119, subsection 102(e) should also prevail over section 119, it may be said that a similar specific proviso for subsection 102(e) is conspicuous by its absence from section 119. Furthermore, since Congress evi-

dently foresaw the possibility that one subsection of section 102, namely, 102(b), would be read together with section 119, it would appear that Congress should have foreseen the possibility that other subsections of section 102, especially 102 (e), would be read together with section 119. If such had been against the intent of Congress, then other specific provisos similar to that for subsection 102(b), or even a general proviso for the whole of section 102, would have been inserted in section 119. Once again, such provisos are conspicuous by their absence from section 119, in view of the specific proviso for subsection 102(b) included therein.

Section 119 of present Title 35 is the successor of section 4887 of the old Revised Statutes. In 1903 R.S. 4887 was amended in order to provide for a right of priority guaranteed to foreign inventors by Article 4 of a treaty known as the International Convention for the Protection of Industrial Property concluded at Paris on March 20, 1883. The United States Senate first ratified this treaty on March 2, 1887.

The Convention itself has been revised several times, at Brussels on December 14, 1900, at Washington on June 2, 1911, at the Hague on November 6, 1925, at London on June 2, 1934, and at Lisbon on October 31, 1958. The latest (Lisbon) text of the Convention was ratified by the United States Senate on August 17, 1960, and the Senate bill of ratification was signed on August 29, 1960 by President Eisenhower. On January 2, 1962, President Kennedy proclaimed and made public "the said Convention to the end that the same and every article and clause thereof shall be observed and fulfilled with good faith, on and after January 4, 1962, by the United States of America [10] * * *."

application, then one year after the latter files his American application, claiming a right of priority based on his German application. Under 35 U.S.C. § 119, in the absence of the proviso, this would be permissible. With the proviso in 35

U.S.C. § 119, as it is, the German inventor is met by a statutory bar.

[10]. The Presidential Proclamation and the Lisbon text of the Convention for the Protection of Industrial Property are printed in the February 13, 1962 Patent Office Official Gazette at 775 O.G. 321.

Among others, "every article and clause thereof" includes Article 4, with which the present case is chiefly concerned. Some of the major provisions of Article 4 are as follows:

"A–(1) A person who has duly filed an application for a patent \* \* in one of the countries of the Union, or his successor in title, shall enjoy, for the purpose of filing in the other countries, a right of priority during the periods hereinafter stated." 775 O.G. 323.

Thus it is seen that, while 35 U.S.C. § 119 is written in terms of the status of "an application for patent", Article 4 refers merely to an applicant for patent, i. e., "a person who has duly filed an application for a patent." Congress certainly must be conclusively presumed to know the difference between an application and an applicant, especially in view of the alternative specification in 35 U.S.C. § 119 of "applications filed in the United States or to citizens of the United States," (the latter, of course, being the applicants as distinguished from the inanimate applications), when speaking of the "similar privileges" to be afforded by foreign countries.

Also, Article 4 includes a limitation "for the purpose of filing in the other countries" which is conspicuous by its absence from 35 U.S.C. § 119. This would indicate that Congress did not intend section 119 to be so limited as Article 4 in its purpose. Those familiar with patent law need not be reminded that the inclusion of more limitations in a claim narrows its scope, while exclusion of limitations from a claim widens its scope. Similar principles are applicable to the interpretation of treaty articles and statutory provisions implementing these treaty articles.

■ It is evident to the Court that, since Article 4 contains so many more limitations than 35 U.S.C. § 119, which, among other things, implements the Article, therefore the relatively broad provisions of section 119 must be held to include each and every clause of Article 4, just as intermediate scope patent claims are completely within the scope of generic patent claims, although generic claims contain fewer limitations. Yet, at the same time, just as generic claims cover more subject matter than intermediate scope claims, section 119 of present Title 35 must be held to be of broader scope and purpose than the Convention Article which it implements as positive law in the United States.

Some of the other major provisions of Article 4 included within the scope of section 119 are as follows:

"A–(2) Every filing that is equivalent to a regular national filing under domestic law of any country of the Union or under bilateral or multilateral treaties concluded between countries of the Union shall be recognized as giving rise to a right of priority.

(3) By a regular national filing is meant any filing that is adequate to establish the date on which the application was filed in the country concerned, whatever may be the outcome of the application." 775 O.G. 323.

■ Among other things, these provisions mean that a foreign application need not satisfy the requirements of 35 U.S.C. § 112 in order to give rise to a right of priority in the United States, it being sufficient if the requirements of the "domestic law" of the foreign country where the foreign application is filed are met. In distinction, the counterpart United States application of a foreign inventor for the same invention must, of course, meet the requirements of 35 U.S.C. § 112.

Clause A–(3) establishes the fact, mentioned previously, that "the outcome of the application" which gives rise to a right of priority is immaterial. The Feather et al. British application, for example, could have been abandoned prior to grant of a British patent, or even prior to publication of the accepted application by the British Patent Office.

Clause B of Article 4 is extremely significant for purposes of understanding the present case:

"Consequently, the subsequent filing in any of the other countries of the Union before the expiration of those periods shall not be invalidated through any acts accomplished in the interval, as, for instance, by another filing, by publication or exploitation of the invention, * * * and these acts cannot give rise to any right of third parties, or of any personal possession. Rights acquired by third parties before the date of the first application which serves as the basis for the right of priority are reserved under the domestic legislation of each country of the Union." 775 O.G. 323.

Therefore, it is evident that "these acts," including actual reduction to practice by Rapala or even filing a United States patent application if he had done so, which would merely amount to "another filing," not only shall not invalidate the subsequent filing of the Feather et al. United States patent application, but also "these acts cannot give rise to any right of third parties," including Rapala and plaintiff, his assignee, among others. It must be emphasized that it is acts accomplished in the *interval,* one year at most, between a foreign inventor's foreign filing date (Convention priority date) and United States filing date which "cannot give rise to any right of third parties." The Convention specifically provides for the reservation of third party rights acquired *before* the filing date of the first application which serves as the basis for a claim to the right of priority guaranteed foreign inventors by the combination of 35 U.S.C. § 119 and Article 4 of the duly ratified treaty. Such rights of third parties acquired *prior* to the Convention priority date, or prior to the first of these dates if several Convention priority dates are relied upon by a foreign inventor, are expressly "reserved under the domestic legislation of each country of the Union," which in the United States would mean by Act of Congress, the "domestic" legislature for this country.

At this point, the Court notes that it is not strictly correct to say that 35 U.S.C. § 119 implemented as positive law in this country all of the provisions of Article 4 of the Lisbon text, which is a 1958 revision of the Convention. The 1934 London text [11] was in effect in this country at the time 35 U.S.C. § 119 was enacted by Congress in 1952, so it is more correct to say that Article 4 of the London text was implemented by section 119. The question may arise as to the effect of new provisions included for the first time in Article 4 of the 1958 Lisbon text. This Court believes an argument could be made that such new provisions are implicitly included in 35 U.S.C. § 119, which is much broader in scope than Article 4 of either text. However, Congress evidently realized the desirability of expressly including in section 119 a particular new provision of the 1958 Lisbon text in order to remove a popular misconception that the foreign application upon which Convention priority is based must be the first foreign application. As a matter of fact, it has long been the established rule that, if the foreign inventor files first in a foreign country which is not a member of one of the Conventions [12] or which has no

---

11. 53 Stat. 1748, 613 O.G. 23.

12. In addition to the International Convention for the Protection of Industrial Property, with which the present case is concerned, the broad language of 35 U.S.C. § 119 also is applicable to foreign countries which, together with the United States, are members of the Inter-American Convention relating to Inventions, Patents, Designs and Industrial Models, signed at Buenos Aires August 20, 1910 (38 Stat. 1811, 207 O.G. 935). 35 U.S.C. § 119 also applies to foreign countries which have reciprocal legislation similar to 35 U.S.C. § 119. See also 35 U.S.C.A. § 119, 1964 Cumulative Annual Pocket Part, for a list of countries, including the Federal Republic of Germany, Italy, and Japan, with which the United States has entered into Treaties of Friendship, Com-

appropriate reciprocal legislation similar to our 35 U.S.C. § 119, this does not necessarily affect his right to claim a right of priority based on an application filed subsequently in a Convention country. For example, Feather et al. could have filed in India just before their British filing date, and the outcome of this case would likely have been the same, since India is a non-Convention country at present.

Clause C–(4) of Article 4 of the 1958 Lisbon text of the Convention now specifically provides that the foreign application upon which the right of priority is based need not even be the first application filed in a Convention country. Convention priority may, in some instances, be based on a subsequent application filed in the *same* Convention country. While it was not strictly necessary for Congress to do so, it was evidently considered desirable to specifically amend 35 U.S.C. § 119 in view of the expression in the first paragraph of section 119 regarding "the application for patent for the same invention was first filed in such foreign country * * *." In order to avoid confusion which might result from this use of the word "first," Congress amended section 119 on October 3, 1961 (75 Stat. 748) by adding a new third paragraph, which begins as follows:

"In like manner and subject to the same conditions and requirements, the right provided in this section may be based upon a subsequent regularly filed application in the same foreign country instead of the first filed foreign application * * *." [13]

Another important provision in the Convention for purposes of this case is Clause D–(3) of Article 4 which reads as follows:

"The countries of the Union may require any person making a declaration of priority to produce a copy of the application (specification, drawings, etc.) previously filed. * * *" 775 O.G. 324.

Thus, the terms of the 'Convention itself do not require the filing of a certified copy of the foreign application upon which the right of priority is based. More importantly, 35 U.S.C. § 119 required this by statute for the first time in 1952. The predecessors of section 119, namely R.S. 4887 and section 32 of old Title 35 (1946 Edition) did not include such a requirement for the filing of certified copies of foreign applications upon which claims to Convention priority rights were based. In 1952, a second paragraph was included in 35 U.S.C. § 119, which paragraph begins as follows:

"No application for patent shall be entitled to this right of priority unless a claim therefor and a certified copy of the original foreign application, specification and drawings upon which it is based are filed in the Patent Office before the patent is granted, or at such time during the pendency of the application as required by the Commissioner not earlier than six months after the filing of the application in this country. * * *"

With regard to this new second paragraph added in 1952, the Reviser's Note for 35 U.S.C.A. § 119 includes the following information:

"The second paragraph is new, making an additional procedural requirement for obtaining the right of priority. Copies of the foreign papers on which the right of priority is based are required so that the record of the United States patent will be complete in this country."

To summarize this point, prior to 1952, neither the Convention nor United States statute law required the filing of certified copies of these foreign applications. In the case of United States patents issued subsequent to January 1, 1953, when the Patent Act of 1952 took effect, a mandatory requirement was

---

merce, and Navigation providing for reciprocal treatment of persons obtaining and maintaining patents of invention.

13. 35 U.S.C.A. § 119, 1964 Cumulative Annual Pocket Part.

made that certified copies of these foreign applications, upon which priority rights were based, must be filed in the United States Patent Office. This requirement was not merely procedural, but substantive, since a foreign inventor who claimed a right of priority for his United States application without filing a certified copy of the appropriate foreign application would not obtain the benefits of 35 U.S.C. § 119 for his United States application. By the express terms of the second paragraph of 35 U.S.C. § 119, "[n]o application for patent shall be entitled to this right of priority unless" two conditions are fulfilled. First, a claim to the right of priority must be made by the inventor or record assignee. Second, a "certified copy of the original foreign application" must be filed in the Patent Office at some time before the United States patent is granted. If either condition is met without the fulfillment of the other condition, then the foreign inventor's United States application obtains no right of priority under section 119. More will be said about this 1952 statutory change later in this Opinion.

The facts that a United States application may obtain the Convention priorities of several different foreign applications, each of which discloses some new matter for the first time, and that the United States application itself may include new matter disclosed by the foreign inventor for the first time, are shown by Clause F of Article 4, which begins as follows:

"No country of the Union may refuse a priority or a patent application on the ground that the applicant claims multiple priorities, even originating in different countries, or on the ground that an application claiming one or more priorities contains one or more elements that were not included in the original application or applications whose priority is claimed, provided that, in both cases, there is unity of invention within the meaning of the law of the country."

The last clause of Article 4 of the Convention establishes the fact that no valid distinction can be made between claimed and unclaimed disclosures of the foreign applications upon which the right of priority of the counterpart United States application is based. Clause H of Article 4 is as follows:

"Priority may not be refused on the ground that certain elements of the invention for which priority is claimed do not appear among the claims formulated in the application in the country of origin, provided that the application documents as a whole specifically disclose such elements."

Proceeding now to further detailed consideration of 35 U.S.C. § 119, which implements Article 4, it was mentioned earlier in this Opinion that the second paragraph of section 119 was added for the first time in 1952 and that the new third paragraph was added in 1961. The first paragraph of section 119 of present Title 35 corresponds to the second paragraph of Section 4887 of the old Revised Statutes as amended by the Act of March 3, 1903 (32 Stat. 1225). The second paragraph was added to R.S. 4887 in 1903 by Congress, acting upon a recommendation to that effect by three Commissioners appointed in 1898 by Congress to study the existing patent laws then in effect in this country and to make recommendations for their revision (Act of June 4, 1898; 30 Stat. 431). The pertinent recommendation made by Commissioners Forbes, Grosscup, and Greeley in their 1900 report to Congress reads as follows:

"We are, therefore, of the opinion that an amendment to the law should be made, providing that the foreign application shall have, in case an application is filed in this country by the applicant abroad within the specified period the same effect as if

filed here on the day it was filed abroad." [14]

It is worthy of mention that the Commissioner's Report, the second paragraph of R.S. 4887, and the first paragraph of 35 U.S.C. § 119 all speak in terms of an "application" as though the application is to have a status independent of the person, or "applicant," who files the application. Yet plaintiff contends that Congress really meant "applicant," although the word "application" is used, and used several times in both R.S. 4887 and 35 U.S.C. § 119, since Article 4 of the Convention speaks in terms of a "person," natural or legal, "who has duly filed an application for a patent." This Court cannot agree with plaintiff that Congress really did not mean what it said in enacting these statutes. Congress, in implementing Article 4 of the Convention, had the power to make the statutory provision broader than Article 4, or narrower, or of identical scope to that of the Article. Congress chose to make the statutory provision broader, probably because the provision is designed to cover agreements other than the International Convention itself, such as the Inter-American Convention of 1910 and bilateral Treaties of Friendship, Commerce, and Navigation. Thus, there are good reasons why the Court should not hold that R.S. 4887 and 35 U.S.C. § 119 are strictly limited to the implementation of one article of one multilateral treaty, namely, Article 4 of the International Convention for the Protection of Industrial Property. Congress certainly did not intend for 35 U.S.C. § 119 to be so limited in 1952, even assuming *arguendo* that Congress intended the second paragraph of R.S. 4887 to be so limited in 1903.

The intent of Congress was not that limited even in 1903, however, as the second paragraph of R.S. 4887 spoke of "a foreign country which, by treaty, convention, or law, affords similar privileges to citizens of the United States." Section 119 now speaks of "a foreign country which affords similar privileges in the case of applications filed in the United States or to citizens of the United States." Just as R.S. 4887 expressly provided that the "similar privileges" might be afforded "by treaty, convention, or law," so today these unnecessary words are implicitly included after "similar privileges" in 35 U.S.C. § 119.

It should be noted also that the alternative expression in section 119, "applications filed in the United States or to citizens of the United States," is broader than the corresponding expression in R.S. 4887, which merely recited the words "citizens of the United States." This leads to a point raised by plaintiff in the present case. Originally, this action was brought under the provisions of 35 U.S.C. § 145 in this Court because of an apparent need of plaintiff to prove, as a matter of fact, exactly what are the provisions of British patent law in this area. Plaintiff and defendant subsequently agreed to the filing of stipulations as to the pertinent provisions of British patent law and thereby removed this sole issue of fact from the present case. Plaintiff still contends as a matter of law that Great Britain does not afford "similar privileges in the case of applications filed in the United States." It is highly significant that the sentence in the McDougall affidavit of record stops with the language just quoted. The statute, 35 U.S.C. § 119, does not stop there, but rather goes on to provide that, in the alternative, the foreign country may afford "similar privileges" to "citizens of the United States."

In short, 35 U.S.C. § 119 provides a status to a United States application of a foreign inventor under certain circumstances. In order to qualify for the benefits of section 119, it is sufficient that the foreign country of which the inventor is a citizen or subject (assuming the inventor files first in his own

14. "Report of the Commissioners Appointed to Revise the Statutes Relating to Patents, Trade and Other Marks, and Trade and Commercial Names," Washington, Government Printing Office, 1902, page 24.

homeland, which is usually the case), provides *either* a status to previous "applications filed in the United States" *or* a personal privilege to "citizens of the United States" who have filed such previous applications in the United States. In either case, the foreign inventor's United States application is entitled to a certain status, if there is compliance with the requirements of 35 U.S.C. § 119. Once this status attaches to the application, it is there permanently, both offensively for the invention claimed by the foreign inventor and defensively for whatever he discloses but does not claim. It may even be that the status acquired by the United States application may subsequently prove adverse to the foreign inventor's own interests, but the Court cannot see how anyone, even the foreign inventor himself, could divest the application of this status once it has attached, especially after the application has matured into a United States patent.

Plaintiff has not contended that Great Britain does not afford "similar privileges" to "citizens of the United States" who have previously filed United States applications prior to filing British counterpart applications. Indeed, since "similar" does not mean "same" or "identical" and could include either offensive privileges for the invention claimed, or defensive privileges for inventions disclosed but not claimed, or both types of privileges, plaintiff could not make such a contention, on the basis of the stipulations concerning British patent law filed in this Court.[15]

If the British Patent Office were in fact denying Convention priority rights to which United States citizens are entitled under Article 4, and there is no evidence to support this, the Court is of the opinion that a large American corporation such as plaintiff would be among the first to know, since plaintiff is presumably filing counterpart applications in the British Patent Office while claiming Convention priority rights based on previously filed United States applications.

■ If any foreign country is in fact denying Convention priority rights to United States citizens in violation of Article 4, the aggrieved citizens should bring this to the attention of the United States Patent Office which, together with the Department of State, can settle the matter with the offending country. If the foreign country is actually violating Article 4, and it should be noted that the terms (although perhaps not the spirit) of Article 4 are apparently satisfied if offensive privileges for the claimed invention are provided, then the Patent Office can, and should, refuse to grant the broader 35 U.S.C. § 119 offensive and defensive benefits to United States applications filed by citizens or subjects of the offending country, at least until the matter is rectified.

■ In other words, it is not considered proper to litigate in this Court the issue of whether the various countries of the world are in fact living up to their treaty obligations, including those under the International Convention, and the Patent Office is not required to prove that the countries are doing so. If a nation is a Convention country, it may be presumed that that nation is adhering to its Convention obligations, including that of Article 4. The presumption may be rebutted, but the burden of proof is on the party alleging that a nation is disregarding the obligations of a solemn treaty which her representatives have signed and ratified. Plaintiff here has not made such an allegation with respect to Great Britain, and even if there were such a charge, the evidence of record would not suffice to sustain it. Thus, Great Britain must be held to be affording "similar privileges," at least to "citizens of the United States," and British inventors Feather et al. are entitled to the full offensive and defensive benefits provided by 35 U.S.C. § 119 for their United States application, which has now matured into patent No. 3,021,345.

■ The words "shall have the same effect" in 35 U.S.C. § 119, first para-

---

15. See also the Knight address, supra, note 6, pp. 19–20.

graph, were also present in the second paragraph of R.S. 4887, as amended in 1903 ("shall have the same force and effect"). The Court has no difficulty understanding the meaning of these words, which are clear and unambiguous. They mean that the foreign filing date is, in certain circumstances, to be considered the filing date of the United States counterpart application for the same invention, according to the provisions of 35 U.S.C. § 119. In the interest of complete treatment of the subject, however, the Court will now refer to a Committee Report excerpt relied upon by plaintiff to establish the contention that, just as "application" really means "applicant," so too the words "shall have the same effect" must be limited to the applicant's right to a patent on his application.

A 1946 Committee Report of the House Committee on Patents contains the following statement:

> "In this connection, it may be observed that the portion of the statute which provides that the filing of a foreign application—
>
> shall have the same force and effect as the same application would have if filed in this country on the date on which the application for patent for the same invention, discovery, or design was first filed in such foreign country.—
>
> is intended to mean 'shall have the same force and effect,' etc., insofar as applicant's right to a patent is concerned. This statutory provision has no bearing upon the right of another party to a patent except in the case of an interference where the two parties are claiming the same patentable invention." [16]

In addition to the fact that the words "shall have the same effect" are clear and unambiguous, so that no hidden limitations should be read into them, several observations may be made concerning the cited Committee Report excerpt.

First, the last portion of the excerpt explaining the meaning of the words "shall have the same (force and) effect" is obviously taken verbatim from the opinion of Commissioner Coe in Viviani v. Taylor v. Herzog, 72 USPQ 448, 449 (1935). There is nothing to indicate that even the House Committee on Patents, let alone Congress itself, or even the whole House of Representatives, devoted any independent thought to this interpretation of the statute by the Commissioner of Patents in 1935. If the decision of the Commissioner was incorrect, and more will be said about this later, no reason is seen why an excerpt from an erroneous decision should be given any more weight simply because it is included without question in a House Committee Report. This is especially true when the Committee Report deals only indirectly with the particular statute interpreted in the Report.

The Report was directly concerned with the Boykin Act (60 Stat. 940), an Act to extend temporarily (due to conditions arising from World War II) the time for filing applications for patents, for taking action in the United States Patent Office with respect thereto, and for preventing proof of acts abroad with respect to the making of an invention, and for other purposes. This was not, of course, a Report on section 119 of present Title 35 (1952 Edition). The Report may have an indirect bearing on interpretation of the predecessors of 35 U.S.C. § 119, namely, section 4887 of the Revised Statutes, and section 32 of old Title 35 (1946 edition).

Moreover, two key provisions of the Patent Act of 1952 for purposes of this case, namely, 35 U.S.C. § 102(e) and 35 U.S.C. § 120, were not positive statute law in 1946. Two of the vital questions presented in this case are whether subsection 102(e) should be interpreted in light of section 119, and whether sections

---

16. H.R.Report No. 1498, Vol. 4, 11022, 79th Congress, 2nd Sess., 1946, U.S.Code Cong.Service 1946, p. 1493.

119 and 120 may properly be considered analogous, so that one may be read in light of the other. No 1946 Committee Report can assist in answering these questions, since until 1952 subsection 102(e) and section 120 were only judicial precedents, not positive statutory law.

Lastly, the last sentence of the Committee Report excerpt is not strictly correct today. 35 U.S.C. § 119 by itself has no bearing whatsoever on the right of another party to a patent, even in interference proceedings. It is only when section 119 is combined with other portions of the Patent Act of 1952, notably 35 U.S.C. § 102(g) and 35 U.S.C. § 104, that section 119 has any bearing upon the right of "another" party to a patent. Defendant contends here that section 119 should similarly be read together with other portions of the same Patent Act of 1952, namely, 35 U.S.C. § 102(e) and 35 U.S.C. § 120. The Court is willing to accept defendant's contentions.

With regard to the issue of whether sections 119 and 120 of present Title 35, United States Code, are analogous, it is first noted that these adjacent sections both have headings beginning with the following five words: "Benefit of earlier filing date * * *." Moreover, both sections contain the following key words: "An application for patent for an invention * * * shall have the same effect * * *." In essence, section 119 provides that:

> "An application for patent for an invention filed in this country by any person who has * * * previously regularly filed an application for a patent for the same invention in a foreign country * * * shall have the same effect as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country * * *."

Similarly, section 120 provides that, in essence,:

> "An application for patent for an invention disclosed * * * in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application * * *."

Even if Congress did not in fact intend that these two sections should be read together, as may well be the case, the choice and arrangement of words in these sections is strikingly similar. As previously mentioned, there is no question but that section 120 provides a status for a continuation-in-part application for all (offensive and defensive) purposes of having been filed on the date of the parent application, insofar as commonly disclosed subject matter is concerned. Defendant contends, and this Court agrees, that section 119 provides a similar status for a United States application for both offensive and defensive purposes of having been filed on the date of the first counterpart application in a Convention country, again insofar as commonly disclosed subject matter is concerned.

Plaintiff has raised some objections to any consideration of sections 119 and 120 as analogous sections of present Title 35, United States Code, which objections will now be examined.

While it is true that the two sections have different historical origins, nevertheless both were enacted simultaneously by Congress as parts of the comprehensive Patent Act of 1952.

Plaintiff also makes a practical contention that the issue of whether an application is entitled to the benefit of an earlier filing date under section 120 can be determined entirely by examination of documents of record in the Patent Office files, while the same cannot be said for a similar determination under section 119. The Court agrees with plaintiff that the issue of whether the foreign application, a certified copy of which is deposited in the Patent Office files (as required by the second paragraph of section 119), was "truly the first application filed abroad" (in the words of plaintiff's attorney) cannot be

established with absolute certainty from examination of Patent Office records alone.

In the first place, as previously stated, the foreign application upon which a claim to Convention priority is based need not be the "first application filed abroad," or even the first application in a Convention country.

Furthermore, 35 U.S.C. § 115 provides for the making of oaths by applicants abroad and states that "such oath shall be valid if it complies with the laws of the state or country where made." Rule 65 of the Patent Office Rules of Practice provides further that:

> "The oath shall state whether or not any application for patent on the same invention has been filed in any foreign country, either by the applicant or by his legal representatives or assigns. If any such application has been filed, the applicant shall name the country in which the earliest such application was filed, and shall give the day, month, and year of its filing; he shall also identify by country and by day, month, and year of filing, every such foreign application filed more than twelve months before the filing of the application in this country."

Since 35 U.S.C. § 111 provides that an application for patent in this country shall include "an oath by the applicant as prescribed by section 115 of this title," and since the oath must comply with the detailed requirements of Rule 65 in order to be considered a proper section 115 oath, this Court is of the opinion that adequate safeguards are provided to guard against foul play by foreign inventors.

Lastly, in the event that a foreign inventor might lie under oath, which would probably be an exceedingly rare occurrence, just as it would be for a domestic inventor, a foreign counterpart search[17] would probably locate a foreign patent(s) granted on an application(s) which should have been mentioned in the United States application oath. If such an application were in fact located, this Court is of the opinion that, at a minimum, the burden would be on the party (defendant here) relying on the foreign inventor's Convention priority date to offer evidence which might establish that failure to mention the foreign application in the United States application oath was an inadvertent, rather than deliberate, omission on the part of the foreign inventor.

■ Turning now to a consideration of the 1935 decision of Commissioner of Patents Coe in Viviani v. Taylor v. Herzog, 72 USPQ 448, the Court notes that this decision controlled Patent Office practice in this area for nearly thirty years, until present Commissioner Brenner decided in 1964 that the Viviani precedent should no longer be followed. Since a Commissioner's decision is not binding on the Federal Courts, this Court will not treat the case in the same detailed fashion as Milburn, a Supreme Court decision, was treated earlier in this Opinion.[18]

The Commissioner's decision in Viviani was based on "three factors," each of which may briefly be criticized. First, Commissioner Coe read missing limitations into the general language of R.S. 4887 to restrict its effect solely to implementation of Article 4 of the International Convention. Even in 1903, the second paragraph of R.S. 4887 was intended by Congress to apply to United States applications filed by citizens or subjects of a foreign country which was not a party to the International Convention, so long as the foreign country in question "by treaty, convention, or law,

---

17. Such foreign counterpart searches are regularly made for private parties at reasonable fees by the International Patent Institute at the Hague.

18. Such a detailed analysis of the Viviani case is included in an article by Fishman, entitled "An Analysis of the Combined Effect of 35 U.S.C. § 119, and 35 U.S.C. § 102(e)," Journal of the Patent Office Society, Vol. 46, No. 3, March 1964, especially pages 190–194 thereof.

affords similar privileges to citizens of the United States." There is nothing in the Viviani opinion to indicate that Commissioner Coe was aware that R.S. 4887 was not limited to implementation of Article 4 of the International Convention by Congress, and that such limitations should not have been included by interpretation.

Second, in his brief analysis of the Milburn case, Commissioner Coe declares his belief that the basis of the decision was the fact that the filing of a previous application by Clifford which described the invention subsequently claimed by Whitford was merely evidence of the fact that "the invention was known or used by others in this country" (to use the words of 35 U.S.C. § 102(a)) before Whitford's date of invention. If the Milburn rationale is limited to this, one might well ask why Congress found it desirable to include the specific provision of subsection 102(e) in the Patent Act of 1952, in view of the fact that such a provision was already included in subsection 102(a) and its predecessors, according to Commissioner Coe. The reason for the addition is believed to be the fact that "known or used by others in this country" really refers to *public* knowledge or use, while the disclosures in a United States or foreign patent application constitute secret knowledge, as a practical matter. Thus, this Court does not consider subsection 102(e) as merely a species within the genus of subsection 102(a).

Third, Commissioner Coe stresses the provisions of R.S. 4923, the predecessor of 35 U.S.C. § 102(a). As previously mentioned, when Mr. Justice Holmes referred to previous foreign inventions in the Milburn Opinion, he clearly was referring to this predecessor of subsection 102(a) in general, and to foreign patents for the previous foreign inventions in particular. The present case is not concerned with subsection 102(a), or with foreign patents, or with published foreign patent applications. It is concerned with subsection 102(e), with United States patents, and with unpublished

United States and foreign patent applications pending in secrecy.

In concluding his opinion, Commissioner Coe stated that he felt "compelled to deny the petition in the absence of stronger precedent than is represented by the Yeast decisions" (relied upon by petitioner Taylor). If Commissioner Coe were deciding the case today, he would certainly have "stronger precedent" available in the form of cases relied upon by defendant here.

Although the Court does not accept the "three factors" relied upon by Commissioner Coe in Viviani, it cannot be said that the ultimate decision was incorrect, even though the Court is of the opinion that the refusal to interpret Milburn in light of R.S. 4887 was erroneous. It will be recalled that neither the Convention nor section 4887 in 1935 required the filing of a certified copy of the Briggs British application relied upon by party Taylor in Viviani. If the file wrapper of Briggs United States patent No. 1,934,618 did not in fact contain a certified copy of the Briggs British application upon which a claim to right of Convention priority for the Briggs United States application was based, then it might well have been argued that party Herzog was being deprived of property without due process of law, in violation of the Fifth Amendment to the United States Constitution. Certainly this Court would not sustain a rejection of this type unless a certified copy of the foreign application as originally filed were readily available, preferably in the file wrapper of the United States patent granted on the United States application which was entitled to the right of Convention priority based on the foreign application for patent.

■ One cannot assume that the foreign and United States applications of a foreign inventor are identical. A foreign inventor may file his first foreign application with only one example and then use the one year interval provided by 35 U.S.C. § 119 for additional experimental work so that his counterpart United States application filed one year later

may include several working examples to further illustrate the invention and provide support for broad claims in this country. Only one example, however, would be entitled to full benefit of the filing date of the original foreign application, since this application disclosed only the one example.

In connection with the Viviani case, which set the precedent for Patent Office practice in this area for nearly thirty years, plaintiff contends that the Commissioner should not have changed the practice without authorization from higher authority. While the Patent Office should, of course, comply with statutory patent law and with judicial precedents which may truly be regarded as controlling on the Patent Office (which would not be the case for most infringement suits, for example, unless a Supreme Court decision were involved), no reason is seen why the Patent Office should consider itself absolutely bound by prior Commissioner's decisions. If one Commissioner has good reason to believe that one of his predecessors incorrectly interpreted the law, then the precedent can, and should, be overruled, as the present Commissioner has done here.

Plaintiff further contends, in essence, that the Viviani decision and the practice which it established for thirty years were popular, but the new practice established by the Commissioner is unpopular. Therefore, the Court should infer that the popular past practice was right and the unpopular present practice is wrong. The Court agrees with plaintiff that the present practice is unpopular (at least from the standpoint of American inventors and their patent agents and attorneys), but, more importantly, the Court agrees with defendant that the present practice is the right one.

Plaintiff also relies upon two judicial precedents to sustain his position. Plaintiff cites as "the leading case" on the subject Celanese Corporation of America v. Ribbon Narrow Fabrics Co., 117 F.2d 481 (2nd Cir. 1941). The first observation that may be made concerning this case is that it was decided eleven years prior to enactment by Congress of present Title 35, the Patent Act of 1952.

Since plaintiff places great reliance on this leading case, it is appropriate to first consider the 1940 opinion of the District Court in Celanese Corp. of America v. Ribbon Narrow Fabrics Co., 33 F.Supp. 137 (S.D.N.Y.1940). This opinion contains the following pertinent statements:

> "Patent to Sponholz, No. 1,807,887, offered by the defendant as part of the prior art, was issued on April 23, 1929 on an application filed November 23, 1926. This filing date is earlier than that of Dreyfus but not sufficiently early to be considered prior art, since it appears that Dreyfus completed his invention some time in September 1926. Defendant contends that the effective application date of Sponholz in Germany was May 11, 1926; but that is not so in view of Secs. 4886 and 4923 of the Revised Statutes, 35 U.S.C., Secs. 31, 72. The time when the German patent [became] a printed publication is the effective date, and that time does not appear in the record."[19]

In the first place, the District Court in Celanese apparently did not consider the effective date of the Sponholz patent to be of critical importance in the case, in view of the subsequent statement that "even without the aid of the Sponholz patent it is difficult to see invention in the Dreyfus patent." Also, if the District Court in Celanese had really been concerned with the same issue raised by the facts of the present case, then R.S. 4887 and old 35 U.S.C. § 32 would have been cited as authority, either in addition to, or in lieu of, citation of R.S. 4886 and old 35 U.S.C. § 31. The predecessors of present 35 U.S.C. § 119 were, of course, R.S. 4887 and old 35 U.S.C. § 32.

19. 33 F.Supp. 139.

To make the decision relevant to the present case, the defendant in Celanese would have had to contend that the effective application date of Sponholz in the United States was May 11, 1926, the filing date of the Sponholz German application. Instead, the defendant in Celanese contended "that the effective application date of Sponholz in Germany was May 11, 1926." With this in mind, this Court agrees with the District Court in Celanese that "[t]he time when the German patent became a printed publication (the published German patent application) is the effective date (of the German patent as a reference)."

The present case is not concerned with the effective date as a reference of the Feather et al. British patent (even assuming that there is one, which is unnecessary according to Clause A(3) of Article 4 of the International Convention). This case is concerned with the effective reference date of the Feather et al. United States patent. No reason is seen why a foreign inventor's United States and foreign patents for the same invention should be held to have the same effective reference dates. One may be earlier or later than the other.

On appeal, the Second Circuit Court of Appeals made the following statements in the Celanese Opinion:

"We find in the record no use before Dreyfus of the application of heat to the cut edges of material made wholly or partially of fusible threads to prevent fraying and by disclaimer filed since the trial all his claims have been so limited. Sponholz did show that in his Patent No. 1,709,887 granted April 23, 1929, on his application filed November 23, 1926, but the plaintiff proved and the court found that Dreyfus 'completed his invention some time in September 1926,' and there was no proof that Sponholz was entitled to a date of invention earlier than his filing date. Sponholz had previously applied for a

German patent on May 11, 1926, but that is immaterial as there is no proof of any German patent or published printed description of the same subject matter prior to Dreyfus. 35 U.S.C.A. Sec. 32; Merrell-Soule Co. v. Powdered Milk Co. of America, 2 Cir., 222 F. 911." [20]

Initially, this Court notes that neither the District Court nor the Circuit Court Celanese Opinions contain any citation, let alone discussion, of the Supreme Court Milburn Opinion. If the issue presented in this case had been squarely presented in the Celanese cases, at least one of the two Courts would have discussed, or at least cited Milburn, just as Commissioner Coe discussed Milburn briefly in his Viviani Opinion. The absence of any citation of Milburn in either Celanese Opinion reinforces this Court's conclusion that the issue present in this case was not really considered in the Celanese cases.

The statement of the Second Circuit that "there was no proof that Sponholz was entitled to a date of invention earlier than his filing date" could merely indicate that no certified copy of the Sponholz German application was introduced into evidence in the District Court. If no such certified copy were made of record, then this Court would agree with the Second Circuit that "there was no proof that Sponholz was entitled to a date of invention (by constructive reduction to practice, which may include filing a German patent application, provided that a United States application is filed within one year thereafter, as Sponholz did) earlier than his (actual United States) filing date."

 Another presently important consideration is that mere disclosure of the existence of a foreign application in the foreign inventor's United States application oath does not amount to a claim of right of priority. While Rule 55 of the Patent Office Rules of Practice provides that "[t]he claim to priority need be in no special form and may be made

by the attorney or agent if the foreign application is referred to in the oath as required by Rule 65," nevertheless the claim to priority must be made, or the foreign inventor's United States application shall not be entitled to the right of priority, according to the second paragraph of 35 U.S.C. § 119, which was added in 1952.

When the Second Circuit in Celanese speaks of the fact that "there is no proof of any German patent or published printed description of the same subject matter prior to Dreyfus," it is clear to this Court from the language used that reference is being made in general to the predecessor of 35 U.S.C. § 102(a), which contains the similar words "patented or described in a printed publication in this or a foreign country. "More specifically, the Second Circuit is obviously referring to the effective reference date of a *German* patent for two reasons. First, the excerpt quoted above includes the exact words "German patent" not once, but twice. Second, the cited Merrell-Soule case involves the effective reference date of a German patent. At the risk of undue repetition, this Court will say again that the present case is not concerned with the effective reference date of a German patent, a British patent, or any other foreign patent. This case involves the effective reference date of a United States patent.

In view of the above analysis of the Celanese cases, this Court is of the opinion that these cases do not really support plaintiff's position. At any rate, the Second Circuit Celanese Opinion cannot be accepted as the "leading case" on the particular issue of law which is presented to the Court on the facts of this case.

Plaintiff also relies on a 1954 decision of the Court of Customs and Patent Appeals, In re Walker, 213 F.2d 332, 41 CCPA 913. The following single excerpt from the Walker Opinion quoted by plaintiff should suffice to show that the case does not really support plaintiff's position:

"The rejection by the tribunals of the Patent Office in the case at bar is based not upon the filing date of Whiteley's foreign application but upon the adverse award of priority of invention against appellant and in favor of Whiteley, the patentee."

In other words, the Court of Customs and Patent Appeals could not have made it plainer that the ground of rejection relied upon by the Patent Office Board of Appeals in that case was not the same ground of rejection relied upon by the Board of Appeals in the present case. In order to consider the propriety for a rejection based on "the filing date of Whiteley's foreign application" the Court in Walker would have been forced to make the rejection on its own, since "the tribunals of the Patent Office" did not make such a rejection.

Plaintiff contends that, if the effective reference date of the Whiteley United States patent had been the filing date of the counterpart British application, the Walker claims on appeal would have been barred on it alone, and the more difficult question of priority of invention, as determined by the previous Whiteley-Blumlein (Walker was the legal representative of Blumlein, deceased) interference, need not even have been considered. In essence, plaintiff here contends that the Court of Customs and Patent Appeals in Walker could have considered the propriety of a ground of rejection which was not actually relied upon by the Patent Office tribunals, but which was simpler than the ground of rejection actually relied upon by the Board of Appeals, namely, that "the adverse award of priority of invention against appellant and in favor of Whiteley, the patentee" in the Whiteley-Blumlein interference had settled the issue of priority as between them. The Court, in Walker, in affirming the Board of Appeals decision, chose to base its decision on the ground of rejection actually relied upon by the Board.

In a civil action to obtain a patent brought according to the provisions of 35 U.S.C. § 145, such as the present case, this Court would normally not consider it proper to raise grounds

of rejection not relied upon either by the Patent Office tribunals or by the Solicitor before and during trial of the case. In the absence of clear reasons compelling a contrary result, this Court would decide a 35 U.S.C. § 145 case in favor of the plaintiff if all the grounds of rejection actually relied upon by defendant turned out to be improper or inadequate, even though the Court might be able to think of a ground of rejection which would be both proper and adequate. The function of this Court is to judge the propriety and adequacy of the grounds of rejection actually involved in the case. It is not believed to be the proper function of this Court to apply new grounds of rejection not actually relied upon by defendant. While this Court would no longer presume to speak for the Court of Customs and Patent Appeals on this point, it would be interesting to learn the reaction of that Court to an argument that a ground of rejection not relied upon by the Board of Appeals should be considered on appeal in preference to a ground actually relied upon by the Board whenever the ground not relied upon is simpler than the ground actually relied upon by the Board.

The defendant here cites three cases to sustain his position, as follows: Fleischmann Yeast Co. v. Federal Yeast Corp., 8 F.2d 186 (D.C.Md.1925), affirmed 13 F.2d 570 (4th Cir. 1926); Young v. General Electric Co., 96 F.Supp. 109 (N.D. Ill.1951); and Sperry-Rand Corp. v. Knapp-Monarch Co., 193 F.Supp. 756 (E.D.Pa.1960). To the extent that these cases are really in point, they support defendant's position, with which the Court agrees, so it is unnecessary to discuss these cases in detail, which would merely amount to prolonging an already lengthy Opinion.

However, the following statement by Judge Kirkpatrick in a footnote to the Sperry-Rand Opinion is worthy of mention here:

"Patent No. 2,141,582 to Wimberger issued December 27, 1938, upon an application filed in this country October 29, 1936. However, the same invention was the subject of an application in Austria for a patent filed February 15, 1936. Knapp-Monarch argued that, in spite of the earlier filing date of the Austrian application, the consideration of the patent must be confined to its filing date in this country. However, Section 119 of Title 35 U.S.C. provides that an application for a patent in this country, filed by one who has previously filed an application for the same invention in a foreign country, 'shall have the same effect as the same application would have if filed in this country on the date on which' the foreign application was filed. I fully agree with Remington that this section gives a status to an application, as distinguished from a mere benefit to an applicant, based on the foreign filing. This status is not limited in its effects to the particular applicant involved. Consequently, the Wimberger patent must be considered. * * * " [21]

Plaintiff characterizes this quoted excerpt as dictum, but even if it is, the statement has independent value as a clear expression of the views on this subject of a District Judge experienced in the hearing and determination of patent cases.

Plaintiff's final major argument is that "public policy cries out for rejection of the Commissioner's position." While it is often difficult for the Courts to determine what public policy actually exists in a given area, or whether there even is such a public policy, this Court has discovered that at least some members of the American patent bar strongly believe that it is national public policy to favor American inventors and discriminate against foreign inventors. A recent article in the Journal of the Patent

21. Footnote 3, 193 F.Supp. 757.

Office Society on this subject contains the following statements:

"The foregoing conditions (provided by the Patent Act of 1952) show a clear purpose and effect running through the patent law, favoring American inventors and discriminating against foreign inventors * * *. This favoritism was intentional. It can be traced back to far more discriminatory provisions in the early 19th century, making it very difficult and expensive for foreign inventors to obtain U. S. patents * * *. These discriminatory provisions (of the Patent Act of 1952) were placed in the law and were retained when it was recodified in 1952 as a definite act of legislative policy." [22]

Even assuming *arguendo* that the quoted excerpt correctly reflects American public policy in the "early 19th century," or even in 1952, when present Title 35 was enacted as positive law by Congress, this Court is of the opinion that current national policy toward foreign inventors is expressed in Article 2 of the 1958 Lisbon text of the International Convention for the Protection of Industrial Property, which was ratified August 29, 1960 by the President acting upon advice and consent of the Senate to the ratification. President Kennedy's Proclamation of January 2, 1962, stated that the Convention was made public "to the end that the same and every article and clause thereof shall be observed and fulfilled with good faith, on and after January 4, 1962 by the United States of America * * *". As previously mentioned, the words "every article and clause thereof" include Article 4. The words also include . Article 2, which begins as follows:

"(1) Nationals of each of the countries of the Union shall,. as regards the protection of industrial property, enjoy in all the other countries of the Union the advantages that their respective laws now grant, or may hereafter grant, to nationals, without prejudice to the rights specially provided by the present Convention. Consequently, they shall have the same protection as the latter, and the same legal remedy against any infringement of their rights, provided they observe the conditions and formalities imposed upon nationals.

"(2) However, no condition as to the possession of a domicile or establishment in the country where protection is claimed may be required of persons entitled to the benefits of the Union for the enjoyment of any industrial property rights." [23]

In a few words, Article 2 provides that foreign inventors who are citizens or subjects of Convention countries shall enjoy the same substantive rights in the United States as American inventors, since the United States is a Convention country. According to Clause (3) of Article 2,[24] foreign inventors may not necessarily enjoy the same procedural benefits as American inventors, but they shall enjoy the same substantive rights.

However, it would appear from the authorities cited to this Court that neither the International Convention as a whole, nor any Article or clause thereof, can properly be considered self-executing. Opinion of Attorney General Miller, 47 O.G. 398, 1889 C.D. 253; Cameron Septic Tank Co. v. City of Knoxville, 227 U.S. 39, 33 S.Ct. 209, 57

22. Meyer, "Are Patents Effective References as of Foreign Filing Dates?," 47 J.P.O.S. 391, 401–2, June, 1965.

23. 775 O.G. 322.

24. (3) The provisions of the laws of each of the countries of the Union relating to judicial and administrative procedure and to jurisdiction and to the election of domicile or the designation of an agent, which may be required by the laws on industrial property, are expressly reserved. 775 O.G. 323.

L.Ed. 407 (1913). This being so, no Article of the Convention which has not actually been implemented by Act of Congress can properly be considered part of "the Supreme Law of the Land" according to Article 6, Clause 2 of the United States Constitution. Article 4 of the Convention was actually implemented by Congress in 1903, when R.S. 4887, the predecessor of 35 U.S.C. § 119, was amended. To the extent that Article 2 has not yet been similarly implemented, it has the mere status of an unfulfilled national promise. At any rate, the Court believes that Article 2 could not be held to have implicitly repealed any sections of the prior Patent Act of 1952, even though such sections might be clearly inconsistent with Article 2 of the 1958 Lisbon Text of the International Convention, which was duly ratified by the United States in 1960. Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386.

Even though Article 2 of the 1958 Lisbon text is probably not a self-executing treaty provision, it nevertheless has independent value as a clearer and more recent statement of national public policy toward foreign inventions than anything which might be inferred from statutory provisions of the Patent Act of 1952. This Court is of the opinion that, when the United States ratified the Lisbon text of the Convention in 1960, a national public policy was declared to the effect that foreign inventors should receive treatment essentially equal to that accorded American inventors, insofar as it was possible to do so without clear violation of the terms of present Title 35 of the United States Code.

At this point in consideration of the public policy aspects, it is believed appropriate to consider the effect of 35 U.S.C. § 104 for at least three reasons. First, section 104 is concerned with proof of a date of invention for an invention made abroad, and reference patentees Feather et al. made their invention abroad in this case. Second, section 104 contains a specific cross-reference to section 119, one of the two most important statutory provisions in this case. Third, while section 104 expressly forbids foreign inventors to prove a date of invention abroad by actual reduction to practice, American inventors are allowed to prove a date of invention in this country (or abroad, in the case of Government employees) by actual reduction to practice, as applicant Rapala, plaintiff's assignor, did in the present case.

Section 104 of present Title 35 reads as follows:

"In proceedings in the Patent Office and in the courts, an applicant for a patent, or a patentee, may not establish a date of invention by reference to knowledge or use thereof, or other activity with respect thereto, in a foreign country, except as provided in section 119 of this title. Where an invention was made by a person, civil or military, while domiciled in the United States and serving in a foreign country in connection with operations by or on behalf of the United States, he shall be entitled to the same rights of priority with respect to such invention as if the same had been made in the United States".

As pointed out by Judge Holtzoff in Monaco et al. v. Hoffman et al., 189 F.Supp. 474 (D.C.D.C.1960), affirmed 110 U.S.App.D.C. 406, 293 F.2d 883, section 104 can in no sense be regarded as discriminatory as a matter of law, since foreign inventors are not precluded from proving actual reduction to practice of inventions made in the United States, and American inventors who are not Government employees are forbidden to establish a date of invention by actual reduction to practice for inventions made abroad. However, in the nature of things, this Court takes judicial notice of the obvious facts that the overwhelming majority of foreign inventors make their inventions in the foreign countries where they live and work, and the overwhelming majority of American inventors either make their inven-

tions in this country, where most American inventors live and work, or make their inventions in foreign countries where they are serving as employees of the United States Government. Thus, it would appear that section 104 provides discrimination as a matter of fact to foreign inventors involved in interference proceedings with American inventors, as in the Monaco case, even though such discrimination is legal according to 35 U.S.C. § 104.

The really important consideration for purposes of the present case, however, is that Congress clearly did not intend any discrimination toward foreign inventors in enacting the predecessor of section 104 in 1946. In tracing the legislative history of the statute in the Monaco opinion, Judge Holtzoff cites the appropriate Committee Report excerpt establishing that the only two reasons underlying this statute, as far as Congress was concerned, were (1) uniformity of practice and (2) procedural convenience.[25]

Neither of these reasons, of course, has anything to do with the provision of either discrimination to foreign inventors or favoritism to American inventors. Such discrimination as might be provided in fact to foreign inventors by section 104 is apparently a mere unfortunate accident, certainly unintended by Congress on the basis of the two reasons advanced in the Committee Report excerpt.

Thus, since Congress clearly intended no discrimination toward foreign inventors in the area of actual reduction to practice, where discrimination is apparently present in fact, then this Court certainly cannot say that Congress intended discrimination toward foreign inventors (or favoritism toward American inventors, another way of saying the same thing) in the equally important area of constructive reduction to practice, especially where there is not the slightest indication of discrimination (legal, factual, intended, or otherwise) in the latter area.

This being the case, it appears to this Court to be national public policy to place foreign and American inventors on the same level in obtaining full benefits of their application filing dates. Since American inventors already receive the full defensive benefits of application filing dates in their country for unclaimed patent disclosures under 35 U.S.C. § 102(e), it is appropriate to combine section 102(e) with section 119 so that foreign inventors may receive the full defensive benefits of application filing dates in their countries for unclaimed disclosure in their United States patents.

Lastly, it is appropriate to consider the effect of the alternative statutory interpretations on the general American public, which Congress really is supposed to represent.

If plaintiff's interpretation is accepted, it will have a monopoly for seventeen years on subject matter already available to the American public by virtue of the fact that the subject matter is disclosed but not claimed in the Feather et al. United States patent. If, on the other hand, defendant's interpretation is accepted, there will be no such monopoly on the subject matter disclosed but not claimed in the Feather et al. patent, and the American public and any segment thereof will be perfectly free to use such unclaimed disclosures. This Court cannot say that Congress, in its capacity of representing the general American public, did not actually intend the latter result.

Since there is no genuine issue as to any material fact, and defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and plaintiff's complaint is dismissed.

25. 189 F.Supp. 480–481.